UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIE H. PERRY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEVE PRESTON,<br>　Secretary, U.S. Department of<br>　Housing and Urban Development<br><br>　　　　Defendant. | )<br>)<br>)<br>)　Civ. Action No.:  07-01010 (RCL)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION FOR LEAVE
TO FILE FIRST AMENDED COMPLAINT**

　　Plaintiff to the above action respectfully moves the Court, pursuant to Rule 15, Fed. R. Civ. P., for leave to file her First Amended Complaint, lodged herewith.  The grounds in support of this Motion are fully explained in the accompanying Memorandum of Points and Authorities.  A proposed Order has also been filed, in accordance with LCvR 7.1(c).

　　Counsel for defendant has been advised of this Motion, and was provided draft Amended Complaints on August 29 and September 4, 2008.  Notwithstanding his opportunity to review the Amended Complaint prior to filing, counsel for defendant stated that it is his belief that, pursuant to the Court's Order of August 18, 2008, defendant has 14 days from the filing of this Motion to take a position on Plaintiff's Motion for Leave to Amend and the proposed First Amended Complaint.

Respectfully submitted,

/s/
_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

/s/
_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
Telephone:  (202) 393-8200
Fax:  (202) 318-2287

Counsel for Plaintiff

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIE H. PERRY, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>STEVE PRESTON, )<br>  Secretary, U.S. Department of )<br>  Housing and Urban Development )<br>)<br>    Defendant. )<br>_____) | Civ. Action No.:  07-01010 (RCL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION TO FILE FIRST AMENDED COMPLAINT**

    This action was initiated on June 5, 2007 by plaintiff, Marie H. Perry, who drafted her Complaint without the assistance of an attorney. Naturally, without the assistance of experienced counsel, the Complaint was not drafted as advantageously to plaintiff as it could have been. Additionally, as they were stated in the Complaint, the counts failed to precisely explain the employment actions over which plaintiff seeks relief.

    Plaintiff retained the undersigned counsel in June of this year, who have worked with plaintiff since then to refine and better articulate her claims through her First Amended Complaint, which is attached to this Motion.[1] In it, plaintiff has narrowed her claims to one count of race discrimination and clearly explained her bases for asserting that the agency's

---

[1] Pursuant to the Court's Order of of August 18, 2008, plaintiff was to file her Motion for Leave to File First Amended Complaint, along with the proposed Amended Complaint, on September 2, 2008. Due to an emergency in plaintiff's family, she was not available to provide her comments to the final draft of the Amended Complaint until today. For that reason, counsel for plaintiff made a Motion for Extension of Time to File First Amended Complaint on September 2, 2008.

1

actions were discriminatory. Because almost no discovery has been conducted up to this point in the case, defendant will not be prejudiced if plaintiff is allowed to amend her complaint at this time.

## ARGUMENT

### Plaintiff Should Be Granted Leave to File Her First Amended Complaint

Rule 15(a), Fed. R. Civ. P., directs that leave to amend a complaint "shall be freely given" to a plaintiff. Indeed, in Foman v. Davis, the Supreme Court held that Rule 15 is an affirmative mandate that should be heeded: "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 182 (1962). In the absence of undue delay, bad faith, or dilatory motive, leave to amend must be granted unless the defendant can demonstrate unfair prejudice. Id.; see also Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330-31 (1970). Defendant cannot do so here.

To date, plaintiff has not conducted any discovery. Defendant agreed to postpone its deposition of plaintiff, which was most recently scheduled for July 14, 2008, in anticipation of this Motion being filed. Defendant has propounded written discovery, but plaintiff has not yet responded because she was reluctant to do so without the assistance of counsel. Accordingly, defendant would not be prejudiced, and in fact would likely be helped, if plaintiff were allowed to clarify her claims as she has done in her proposed First Amended Complaint.

Since leave to amend was sought in a timely fashion after plaintiff retained counsel and because defendant will not be prejudiced if leave is granted, proper application of Rule 15 warrants granting this Motion. See e.g., Zenith Radio Corp., supra; Foman v. Davis, supra.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully moves the Court for leave to file the First Amended Complaint lodged herewith.

Respectfully submitted,

/s/
_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

/s/
_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIE H. PERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civ. Action No.:  07-01010 (RCL) |
| v. ) | |
| ) | |
| **STEVE PRESTON,** ) | |
| Secretary, U.S. Department of ) | |
| Housing and Urban Development ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**FIRST AMENDED COMPLAINT**

1.) This is an action by plaintiff, Marie H. Perry, an African American woman who is a highly successful Freedom of Information Act ("FOIA") Specialist with the Department of Housing and Urban Development ("HUD"). During the time period at issue in this case, the FOIA office where plaintiff works was located within the Office of General Counsel ("OGC").

2.) After having received performance appraisals at the "Outstanding" level for approximately 8 years, and due to the complex nature of the job duties she independently performs as a seasoned FOIA Specialist, in approximately January of 2005, plaintiff requested that her supervisor, Assistant General Counsel Holly Salamido, a Caucasian female, non-competitively promote her from the GS-11 to the GS-12 grade level. When Ms. Salamido refused, plaintiff requested a desk audit.

3.) The desk audit confirmed that plaintiff's position was properly classified at the GS-12 level based on information submitted by plaintiff and by Ms. Salamido during the audit process. Rather than granting plaintiff a promotion, however, Ms. Salamido, on behalf of the

1

OGC, contested the results of the desk audit by submitting a written rebuttal and newly-created position descriptions for GS-11 and GS-12 FOIA Specialists, which inaccurately attributed plaintiff's most complex duties to the GS-12 position.

     4.)    As a result of defendant's submissions, a new desk audit report was issued on or about December 28, 2005 erroneously finding that plaintiff's position was properly classified at the GS-11 level. Plaintiff was then informed that the only way to obtain promotion to the position of GS-12 FOIA Specialist would be if a vacancy opened at the GS-12 level for competitive selection. Plaintiff remained and continues to be employed at the GS-11 grade level.

     5.)    During the same time period, Ms. Salamido baselessly challenged the favorable desk audit of Deidra Jenkins, a similarly situated African American FOIA Specialist who, like plaintiff, sought non-competitive promotion to the GS-12 level due to accretion of duties. The result was the same as in plaintiff's case; specifically, even though Ms. Jenkins's initial desk audit confirmed that her position was properly graded at GS-12, defendant submitted a written rebuttal and used pretextual new position descriptions to attribute Ms. Jenkins's most significant duties to a higher graded position and confine her to the GS-11 grade.

     6.)    Defendant's treatment of plaintiff and Ms. Jenkins stands in stark contrast to its promotion in 1999 of a Caucasian FOIA Specialist to GS-12 based on accretion of duties, without that Specialist having to request a desk audit or compete for the position. For a substantial portion of the time since then, that Specialist has been out of the office due to health concerns, and plaintiff has been performing a portion the work that would have been assigned to her.

     7.)    This case seeks redress for defendant's interference with and improper response to the September 2005 desk audit, which was favorable to plaintiff, thereby causing her not to be

promoted to GS-12. It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

8.) To remedy these unlawful actions, plaintiff seeks: a.) a declaration that HUD violated plaintiff's civil rights and enjoining further discrimination and retaliation against her; b.) an order promoting plaintiff to the position of FOIA Specialist the Grade 12 level, retroactive to September 19, 2005, with commensurate backpay and benefits and/or an order promoting plaintiff to the position of FOIA Specialist at the Grade 13 level, retroactive to August of 2007, with commensurate backpay and benefits; c.) record correction; d.) compensatory damages in the maximum amount available by law; and e.) an award of plaintiffs' attorneys' fees and costs.

## **PARTIES, JURISDICTION, AND VENUE**

9.) Plaintiff, Marie Perry, is an African American woman who is employed as a GS-11 FOIA Specialist at HUD Headquarters in Washington, D.C., where she has worked since 1993.

10.) Defendant, Steve Preston, is the Secretary of HUD, and as such is the official who heads the Department. HUD employs plaintiff and engaged in the acts of discrimination and retaliation that are the subjects of this action. Defendant is sued in his official capacity only.

11.) Jurisdiction of this Court is based upon 28 U.S.C. §1331 and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(f)).

12.) Venue lies in this judicial district pursuant to 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), and 28 U.S.C. §1391, because defendant's acts occurred in this judicial district, where plaintiff is employed and would have been promoted.

## STATEMENT OF THE CASE

### Background

13.) Plaintiff first came to HUD in September of 1993 as a clerk/typist in the FOIA office, which at that time was within the agency's Office of Administration. In 1999, plaintiff changed positions and began work as a GS-6 FOIA Specialist. Within 90 days, she was promoted to GS-7. She continued to work her way up, earning promotion to GS-11 in 2002.

14.) Since joining HUD, plaintiff has always received performance appraisals at or above the Highly Successful level. During the four years immediately preceding the events at issue in this Complaint (from 2000 through 2004), plaintiff received performance appraisals at the Outstanding level.

### Plaintiff's Request for Non-Competitive Promotion to GS-12

15.) In August of 2004, Assistant General Counsel Holly Salamido took over as plaintiff's first line supervisor. Shortly thereafter, plaintiff requested a non-competitive promotion to GS-12 in her mid-year performance review in January of 2005. She made the same request during her annual performance review meeting in March of 2005.

16.) In support of her request, plaintiff explained that her workload had increased considerably in the past 5 years, and that she was performing a significant portion of the work assigned to a Caucasian GS-12 FOIA Specialist who had regularly been out of the office since 1999 for health reasons. Plaintiff further explained that she was the primary FOIA Specialist in the office who processed FOIA requests related to grant documents, which are extremely voluminous.

17.)    Plaintiff also demonstrated that the GS-11 and GS-12 FOIA Specialists in the office performed essentially the same work, and that the difference in grade levels between the employees was not founded.

18.)    At the time plaintiff requested promotion, she was the top-producing FOIA Specialist in the office, including the GS-12 Specialists, as measured by HUD's Automated Correspondence Online Response Network ("ACORN") System Dispatched Report.

19.)    Although plaintiff demonstrated that she was performing at the GS-12 level, Ms. Salamido denied plaintiff's request for promotion.

### Initial Desk Audit Report

20.)    On or about July 25, 2005, plaintiff submitted to Ms. Salamido and to the HUD Human Resources office a memorandum requesting that a desk audit of her position and work be performed. Marlene Thrash, a classification specialist from HUD's Division of Staffing and Classification, was assigned to perform the audit.

21.)    During the audit process, plaintiff was given an audit questionnaire to complete, which she did on or about August 12, 2005. Plaintiff also provided documents demonstrating that she was performing work at the GS-12 level, including the position descriptions for the GS-11 and GS-12 FOIA Specialists; her performance appraisals; examples of work completed by her and by GS-12 Specialists; and a FOIA handbook issued by the Department of Justice.

22.)    The position descriptions provided by plaintiff to Ms. Thrash were the official position descriptions in place at that time for GS-11 and GS-12 FOIA Specialists.

23.)    Ms. Thrash indicated to plaintiff that she would provide Ms. Salamido, as a management official in plaintiff's direct supervisory chain, an opportunity to review and respond to the documents that plaintiff submitted.

5

24.) Ms. Thrash gave Ms. Salamido a "Supervisory Position Review Questionnaire" to complete, which asked for information relevant to determining the proper classification of plaintiff's position.

25.) In her responses, Ms. Salamido stated that in the preceding year, plaintiff had been assigned an increased number of FOIA requests, as well as sensitive and complex requests to process. Further, Ms. Salamido wrote that plaintiff worked independently a significant amount of the time and that her work was reviewed mainly for accuracy and grammatical errors by attorneys in the FOIA office.

26.) Ms. Salamido confirmed that plaintiff's position description was accurate except for two technical discrepancies, and the inclusion of "legal research" as part of plaintiff's job duties, to which Ms. Salamido objected.

27.) Ms. Salamido's responses were considered by the classification specialist in reaching a decision on the desk audit.

28.) On or about September 19, 2005, the HUD Staffing and Classification Division issued the results of the desk audit, which found that plaintiff's "position [met] the criteria for the GS-12 grade level."

29.) The Staffing and Classification Division issued the same finding with respect to the desk audit of Deidra Jenkins, another African American FOIA Specialist in the OGC who requested a desk audit at the same time as plaintiff.

30.) In accordance with federal and agency desk audit procedures, the findings of the Staffing and Classification Division could not be acted upon independently, but could only be put into effect by agency management. Accordingly, they were forwarded to agency management for action.

**OGC's Response to the Desk Audit**

31.)   After Ms. Salamido received the desk audits, which were favorable to plaintiff and Ms. Jenkins, she requested a meeting with the Staffing and Classification Division. During that meeting, which occurred on or about October 26, 2005, Ms. Salamido expressed her disagreement with the finding of the desk audit on the pretextual ground that she supposedly had not been shown the submissions provided by plaintiff during the desk audit process.

32.)   Ms. Salamido requested an opportunity to review the documents submitted by plaintiff and respond to the desk audit report in writing, which she did by memorandum dated November 30, 2005. In that memo, Ms. Salamido contested Ms. Thrash's findings on four criteria covered by the desk audit: knowledge required by the position; supervisory controls; guidelines; and complexity. She also submitted newly-created GS-11 and GS-12 position descriptions for FOIA Specialists.

33.)   The new position descriptions and Ms. Salamido's "new information" were at odds with her own written responses to the supervisory questionnaire, which she had previously provided during the desk audit process.

**The Second Desk Audit Report**

34.)   On or about December 28, 2005, plaintiff received a second desk audit memorandum from the Staffing and Classification Division, which amended the findings of the first desk audit, and found that plaintiff's position was properly classified at the GS-11 level.

35.)   Although the second desk audit upheld the findings of the original audit in the challenged criteria of "knowledge required by the position," "guidelines," and "complexity," it changed the finding in the "supervisory controls" criteria and awarded the position a lower number of points in that category.

36.) The change in the desk audit's findings was based on the rebuttal and rewritten position descriptions provided by OGC, which were pretextual and inaccurate.

37.) As a result of defendant's baseless disparate treatment, plaintiff was not promoted to GS-12, and remained classified at the GS-11 level.

## Exhaustion of Administrative Remedies

38.) On December 28, 2005, plaintiff received the second desk audit report, which amended the first desk audit and erroneously found that she was not performing work at the GS-12 level. The second desk audit report was the result of the OGC's interference with and improper challenge to the first desk audit, which was favorable to plaintiff. Plaintiff initiated the administrative EEO complaints process regarding the second desk audit on or before January 13, 2006, and subsequently filed a formal complaint on February 14, 2006.

39.) In her formal complaint, plaintiff explained the facts surrounding both desk audits; she described her evidence that the agency's challenge to the first desk audit was pretextual and motivated by discrimination, including identifying evidence of disparate treatment; and she identified the bases of her charge of discrimination. She also explained the relief she sought, which included a retroactive promotion to the GS-12 level and compensatory damages.

40.) Although plaintiff did not provide an additional affidavit on the advice of her union representative, the complaint was fully investigated and a complete report of investigation was issued.

41.) The agency failed to send plaintiff a letter or to otherwise notify her that her complaint would be dismissed if she did not respond to the investigator's interrogatories within a certain number of days.

42.) In early March of 2007, plaintiff received the Department of Housing and Urban Development's Final Agency Decision ("FAD") on her complaint. Although the agency stated in the FAD that it was dismissing plaintiff's complaint because she failed to provide information in the investigation, the agency went on to evaluate and resolve the merits of plaintiff's claims based on the evidence she provided in her formal complaint and the evidence garnered during its investigation. The FAD acknowledged that plaintiff had identified a comparator who was treated more favorably than she, although the agency did not give any weight to that evidence. Ultimately, the agency held that plaintiff had not demonstrated that management's reasons for challenging the desk audit were pretextual.

43.) By placing the agency on notice of her claims, and providing sufficient information in her formal complaint for an investigation of them, plaintiff exhausted her administrative remedies. The fact that the agency reached a decision on the merits also demonstrates that plaintiff did not abandon her complaint.

44.) Plaintiff timely filed her Complaint in this Court within 90 days of her receipt of the Final Agency Decision.

## COUNT I
### Race Discrimination

45.) Plaintiff repeats the allegations contained in paragraphs 1 through 44 above, as though fully set forth here.

46.) Plaintiff is an African American woman.

47.) Between July 25 and September 14, 2005, a classification specialist from the HUD Staffing and Classification Division was assigned to conduct and did conduct a desk audit of plaintiff's position and her work, at plaintiff's request.

48.) Based on the audit questionnaires completed by plaintiff and her supervisor and the classification specialist's review of documents provided by plaintiff, including plaintiff's official position description, the classification specialist concluded that plaintiff's position met the criteria for the GS-12 grade level.

49.) During the same time period, a desk audit was conducted for Deidra Jenkins, an African American GS-11 FOIA Specialist who is similarly situated to plaintiff, with the same favorable result.

50.) In accordance with federal and agency desk audit procedures, the findings of the Staffing and Classification Division could not be acted upon independently, but could only be put into effect by agency management.

51.) Upon learning the results of plaintiff's and Ms. Jenkins's desk audits, Ms. Salamido, on behalf of the Office of General Counsel, contested the outcomes through written submissions to the Staffing and Classification Division, and through the provision of newly-written position descriptions for GS-11 and GS-12 FOIA Specialists.

52.) Defendant's new written submissions were inaccurate, baseless, and pretextual, and subjected plaintiff to disparate treatment on account of her race.

53.) Based on Ms. Salamido's submissions, a new desk audit report was prepared, which found that plaintiff's and Ms. Jenkins's positions were properly classified at the GS-11 level.

54.) As a result of defendant's actions, plaintiff was not promoted to GS-12, which constituted an adverse employment action.

55.)    If defendant had not prevented plaintiff from receiving the promotion to GS-12 to which she was entitled, she would have been promoted to GS-13 FOIA Specialist in August of 2007 when the agency opened that position for competitive selection.

56.)    Defendant previously promoted a Caucasian FOIA Specialist from GS-11 to GS-12 based on accretion of duties without that Specialist having to request a desk audit or compete for the promotion.

57.)    In taking the foregoing actions, defendant discriminated against plaintiff on account of her race and violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §2000e-2).

## PRAYER FOR RELIEF

Wherefore, plaintiff Marie H. Perry respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and restraining and enjoining defendant from further such violations.

B.    An Order promoting plaintiff to the position of FOIA Specialist at the Grade 13 level, or alternatively, an order promoting plaintiff to the position of FOIA Specialist at the Grade 12 level.

C.    Backpay and other benefits lost as a result of plaintiff being unlawfully denied promotion to the GS-12 level, retroactive to September 19, 2005 and/or backpay and other benefits lost as a result of plaintiff being unlawfully denied promotion to the GS-13 level, retroactive to August of 2007.

D.    Compensatory damages in an amount to be determined at trial to compensate

plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

    E.      Record correction.

    F.      The attorneys' fees and costs incurred by plaintiff.

    G.      Such other relief as may be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury of all issues so triable.


          Respectfully submitted,

          /s/
      _____
      Robert C. Seldon, Esq.
        D.C. Bar No. 245100


          /s/
      _____
      Molly E. Buie, Esq.
        D.C. Bar No. 483767

      Robert C. Seldon & Associates, P.C.
      1319 F Street, N.W., Suite 200
      Washington, D.C.  20004
      Telephone:  (202) 393-8200
      Fax:  (202) 318-2287

      Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIE H. PERRY,** )<br> )<br> **Plaintiff,** )<br> )<br>v. )<br> )<br>**STEVE PRESTON,** )<br> Secretary, U.S. Department of )<br> Housing and Urban Development )<br> )<br> **Defendant.** )<br>_____) | Civ. Action No.:  07-01010 (RCL) |

## <u>ORDER</u>

Upon consideration of Plaintiff's Motion for Leave to File First Amended Complaint, and the entire record in this matter;

It is hereby:

ORDERED that Plaintiff's Motion be and the same hereby is GRANTED.

FURTHER ORDERED that the parties shall appear for a status conference in Courtroom ___, on the ____ day of ____, 2008, at _____, and be prepared to discuss the schedule for further proceedings in this case.


SO ORDERED this ____ day of _____, 2008.


_____
United States District Judge