UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**MARIE H. PERRY,**                 )
                                    )
       **Plaintiff,**  )
                                    )
    v.                           )    Civil Action No. 07-1010 (RCL)
                                    )
**SHAUN DONOVAN,**                  )
Secretary, U.S. Department of       )
Housing and Urban Development       )
                                    )
       **Defendant.**  )
_____ )

## MEMORANDUM OPINION

Plaintiff Marie Perry, an employee at the United States Department of Housing and Urban Development (hereinafter "HUD"), brings this action against defendant Shaun Donovan in his official capacity as Secretary of HUD.[1] Perry alleges that HUD discriminated against her on account of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Currently before the Court is defendant HUD's Motion [62] for Summary Judgment. For the reasons set forth below, the Court will deny HUD's motion.

**I.    FACTUAL BACKGROUND**

Plaintiff, an African American female, joined the Department of Housing and Urban Development in 1993 as a GS-2 Clerk Typist. (Perry Decl. on Summ. J. Mot. ("Perry Decl.") ¶¶ 1–2.) Plaintiff was moved to the Office of General Counsel ("OGC") in 1996 and converted to a Freedom of Information Act Specialist ("FOIA Specialist") in 1999. (*Id.* ¶¶ 3-4.) In 2002,

---

[1] Plaintiff's complaint originally named Alphonso Jackson as defendant. (*See* Compl. [1] at 2.) Under Rule 25(d), if a public officer sued in his or her official capacity ceases to hold office, "the officer's successor is automatically substituted as a party." FED. R. CIV. P. 25(d). Upon assuming office, Secretary Donovan became defendant in this case.

plaintiff was promoted to her current grade level of GS-11. (*Id*. ¶ 4.) She continues to be employed at that pay level at the current time. (*Id*.) In August 2004, Holly Salamido, a Caucasian female, was appointed Assistant General Counsel of the OGC's FOIA Division and became plaintiff's immediate supervisor. (Salamido Dep. 10:15-11:02, July 21, 2009.)

During plaintiff's mid-year performance review in January 2005 and again during her annual performance review in March 2005, plaintiff spoke to Ms. Salamido about a potential promotion from the GS-11 to GS-12 grade level. (Perry Decl. ¶ 6; Pl.'s Ex. 24 at 3.) Plaintiff's workload had increased, and she was responding to more "complex" FOIA requests than before. (Pl.'s Ex. 4 at Question 4.) Plaintiff believed she was performing GS-12 level work and deserved a promotion based on accretion of duties. (Perry Decl. ¶ 6.)

Ms. Salamido denied her the promotion because she was prohibited from making non-competitive promotions.[2] (Decl. Salamido ¶ 4.) Plaintiff's career ladder position capped her grade level at GS-11. (*Id*.) To obtain a GS-12, plaintiff had to apply for an available GS-12 position or request a desk audit. (*Id*.) There were no available GS-12 vacancies at the time; therefore, on July 25, 2005 plaintiff requested a desk audit. (Pl.'s Ex. 5 [73-12].) Desk audits are "used to assure that [a] position [is] properly classified and that [one is] being adequately compensated for the work [he or she] perform[s]." (Def.'s Ex.15 [62-3].) Desk auditors compile information from an employee interview, an employee's work samples, and a Supervisory Position Review Questionnaire and compare that information to a classification standard, or Position Description, that specifically covers that position.[3] (Thrash Dep. 18:14-23:11, July 17, 2009.)

---

[2] During the period at issue in this litigation (2004-2006), Ms. Salamido never granted any employee a promotion. (Decl. Salamido ¶ 5.)
[3] In this case, because there was no specific "FOIA Specialist" position description, the desk auditor compared plaintiff's job duties to a comparable paralegal specialist series. (Def.'s Ex. 26.)

2

Marlene Thrash, a Human Resources Specialist, conducted plaintiff's desk audit and based on the aforementioned documents determined that plaintiff was working at a GS-12 grade level. (Pl.'s Ex. 5 [73-12].) Ms. Thrash also concluded plaintiff could not be non-competitively promoted because there were other GS-11 FOIA Specialists entitled to compete for the promotion.[4] (*Id.*)

Ms. Salamido challenged the results of the first desk audit because the use of the paralegal series classification standard adversely affected the audit's conclusions (Def.'s Facts ¶ 30), and Ms. Salamido "was not given an opportunity to verify the audit findings" before Ms. Thrash submitted her recommendation to the division director. (Thrash Dep. 18-31.) The Paralegal Specialist Series, GS-950-0, "summarize[s] the essence of performing legal research" but "[n]o legal research has ever been assigned to the FOIA Specialists." (Def.'s Ex. 33.) Therefore, on or about October 24, 2005, Ms. Salamido submitted accurate Position Descriptions (PD) for GS-11 and GS-12 FOIA Specialist positions. (Pl.'s Ex. 10 [73-17].)

Additionally, the desk auditor is required to talk with the employee's supervisor before evaluating the position and submitting the report. (Day Dep. 20:3-10.) Ms. Salamido submitted a memorandum on November 30, 2005 outlining her challenges to the findings of the initial desk audit. (*Id.*) As a result of the additional information received from Ms. Salamido, the position was re-evaluated. (*Id.*) Factor 2, Supervisory Controls, was changed as a result. (*Id.*)

Ms. Salamido's main objection to the first desk audit centered on Factor 2, Supervisory Controls, of the position description (PD). This factor covers the "nature and extent of direct or indirect involvement exercised by the supervisor, the employee's responsibility, the review of

---

[4] "In a situation where you've got several people performing the same duties, it would be against merit principles to just pick one person out and assign them higher-graded duties . . . So to be fair to everyone, you would need to announce the job and then allow any of those employees who were interested the opportunity to compete for it . . . ." (*Ex.* 27, Deposition of Zakiyyah Day at 25:1-25:22.)

completed work" and the employee's expertise ". . . interpreting policy on own initiative." (*Id.*) Ms. Salamido noted that unlike GS-12's, GS-11 FOIA Specialists do not interpret policy but are provided specific instructions on how to apply it in a specific context. (Def.'s Ex. 33.) The extent and sophistication of the knowledge [of FOIA law] distinguishes GS-11's and GS-12's. (*Id.*) Additionally, plaintiff's work samples were not solely her work; others had edited them for accuracy and legal correctness. (*Id.*) Thus, when Ms. Thrash conducted the second desk audit, she took into account the new PD and Ms. Salamido's November 2005 memorandum and determined plaintiff was performing GS-11 work. (*Id.*) Ms. Thrash admitted that she would not have made the findings she did in the first desk audit had she given appropriate weight to Ms. Salamido's Supervisory Position Review Questionnaire rather than the plaintiff's work samples. (Thrash Dep. 90:10-93:21.)[5]

Plaintiff alleges Ms. Salamido's challenge to the first desk audit, specifically to the Supervisory Controls factor, was discriminatory because it resulted in the reversal of the findings of the first desk audit and foreclosed the opportunity for plaintiff to attain promotion. (Pl.'s Opp. Summ. J. 15.) Plaintiff alleges five acts of discrimination: 1) The initial desk audit was correct and its results well-founded; 2) Ms. Salamido misrepresented her level of supervisory control over plaintiff; 3) Ms. Salamido misrepresented the complexity of plaintiff's work; 4) Ms. Salamido failed to revise plaintiff's PD until after the favorable desk audit was issued; and 5) HUD failed to implement plaintiff's revised PD. Additionally, plaintiff points to the non-promotion of Sandra Jenkins, a similarly situated African-American female GS-11 FOIA Specialist, who was also denied promotion based on accretion of duties because Ms. Salamido

---

[5] It should be noted that plaintiff retained an expert in federal classification, Mr. Gerber, to provide an expert opinion regarding whether the initial, favorable desk audit reached the proper result. Mr. Gerber determined that the Supervisory Controls factor was properly graded in the initial desk audit, and therefore plaintiff was indeed working at the GS-12 grade level. (Pl.'s Ex 14. at 3.) He also found that HUD "was obligated to either promote Ms. Perry or to remove the higher level duties." (Gerber Expert Opinion at 5.)

4

challenged her desk audit results. (Pl.'s Opp. Summ. J. 19.)  These claims of intentional discrimination led plaintiff to file suit against HUD.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party's evidence is to be believed, and all reasonable inferences from the record are to be drawn in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 255 (1986). It is not enough, however, for the non-moving party to show that there is "*some* factual dispute." *Id.* at 247.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Thus, summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252.

## III.    TITLE VII CLAIM

Plaintiff has alleged a racial discrimination claim against defendant in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.  First, plaintiff claims HUD's failure to promote plaintiff constitutes an adverse employment action.  Then plaintiff contends HUD's alleged reasons for the non-promotion are pretextual and motivated by unlawful discrimination. Specifically, plaintiff alleges Ms. Salamido unfairly challenged the first desk audit and

contradicted three documents she authored that were favorable to the plaintiff: 1) her earlier Supervisory Position Review Questionnaire submitted as part of the first desk audit; 2) a May 6, 2005 memorandum she co-signed; and 3) her own annual evaluation of plaintiff in March 2005, rating plaintiff as "outstanding." Plaintiff argues these actions were pretextual and discriminatory.

Plaintiff has produced sufficient evidence to show that HUD's failure to promote plaintiff constitutes an adverse employment action, but HUD maintains that its non-discriminatory rationale for its actions is not pretext for discrimination. As set forth below, the Court agrees with plaintiff that there is a genuine issue of material fact whether defendant's reasons were pretextual and discriminatory.

*A. Legal Standard*

Traditionally, with a Title VII discrimination claim, district courts were required to apply a three-step burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, the plaintiff must first prove a *prima facie* case of discrimination. *Id.* at 802. If the plaintiff is successful, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Id.* Finally, if the defendant satisfies its burden, the plaintiff must prove that the defendant's stated reason is pretext for discrimination. *Id.* at 804-05.

In *Brady v. Office of Sergeant at Arms*, the Court of Appeals simplified the District Court's analysis in Title VII disparate-treatment suits. 520, F.3d 490, 494 (D.C. Cir. 2008). Stating that the *prima facie* determination had become a "largely unnecessary sideshow," the court held that in Title VII disparate-treatment suits, the District Court need not determine if the

plaintiff makes a prima facie case of discrimination if the defendant has asserted a legitimate, non-discriminatory reason for the challenged actions. *Id.* As a result, this Court is left with "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.* In other words, the Court must determine if the plaintiff has produced enough evidence such that a reasonable jury would find that the Department's non-discriminatory reasons are mere pretext for underlying unlawful discrimination.

Before the Court can undertake that inquiry, however, the Court must determine whether the alleged acts of discrimination constitute adverse employment actions. *Douglas v. Donovan*, 559 F.3d 549, 551-52 (D.C. Cir. 2009). For an employment action to be adverse, it must result in "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002). Accordingly, an adverse employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id.* at 552 (internal citation and quotation omitted). Alleged acts of discrimination that do not constitute adverse employment actions fail as a matter of law. *Brantley v. Kempthorne*, 2008 WL 2073913, at *4-*5 (D.D.C. May 13, 2008).

*B. Adverse Employment Action*

Defendant HUD contends plaintiff could not have suffered an adverse employment action for failure to promote when there were no available vacancies; however, this Court has recognized that denial of an opportunity for promotion constitutes an adverse employment action.

Plaintiff correctly argues there is an adverse employment action if the employee is denied an opportunity for promotion, and, contrary to defendant's argument, it is unnecessary to show there is a vacant position for which plaintiff is eligible. This Court has recognized that "[p]reventing an employee from receiving a promotion constitutes adverse action." *Chappell-Johnson v. Bair*, 636 F.Supp.2d 135 (D.D.C. 2009) (quoting *Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006)). Refusing to advertise or create a new position, or interfering with the upward classification of a position, are adverse employment actions even if an employer does not open a job and fill it. *See Chappell-Johnson v. Powell*, 440 F.3d 484, 486-88 (D.C. Cir. 2006). Similarly, "refusing to allow [an employee] to compete for [a] promotion is tantamount to refusing to promote him." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000).

Defendant mistakenly relies on *Adesalu v. Copps*, in which the Court held that "[p]laintiff could not have suffered an adverse employment action for failure to promote when there were no available vacancies." *Adesalu v. Copps*, 606 F.Supp.2d 97 (D.D.C. 2009). A footnote to that sentence suggests that had the plaintiff requested a desk audit and presented evidence of work product sufficient to warrant a promotion, the plaintiff could have overcome the lack of vacancy and established an adverse employment action. *Id.* at n.5. Plaintiff in the case at hand requested a desk audit and presented sufficient evidence to be considered for promotion. (*See, e.g.*, Pl.'s SJ Opp. Ex's. 5, 11, 14, 16-18.)

Here, HUD's refusal to allow plaintiff to compete for a GS-12 position has a materially adverse affect on the terms and conditions of her future employment opportunities and thus constitutes an adverse employment action. Although it is unknown whether plaintiff would have received the promotion after it was advertised, "employment decisions of this type are conclusively presumed to be adverse employment actions, even if any alleged harm is speculative." *Douglas v. Donovan*, 559 F.3d. 549, 553 (D.C. Cir. 2009). The alleged harm here is the loss of a significant pay raise, and "a pay raise is objectively tangible because it has a 'direct, measurable, and immediate effect' upon the employee's compensation." *Id*. (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)). Clearly, there was objective tangible harm affecting the plaintiff's future employment opportunities.

### C. Pretext for Unlawful Discrimination and Non-Discriminatory Explanation

Having established that plaintiff was subjected to an adverse employment action under Title VII, the sole remaining issue is whether she produced sufficient evidence from which a reasonable jury could conclude that Ms. Salamido acted for discriminatory reasons when she challenged the initial, favorable desk audit and caused it to be overturned. *Id*. Plaintiff alleges 1) the initial desk audit was correct and its results well-founded; 2) Ms. Salamido misrepresented her level of supervisory control over plaintiff; 3) Ms. Salamido misrepresented the complexity of plaintiff's work; 4) Ms. Salamido failed to revise plaintiff's PD until after the favorable desk audit was issued; and 5) HUD failed to implement plaintiff's revised PD. Defendant argues that the legitimate non-discriminatory reasons for the five alleged acts of discrimination are not pretext for discrimination. As set forth below, the Court disagrees with defendant and finds that a reasonable jury could infer discrimination based on allegation (5), failure to implement

9

plaintiff's revised PD. Defendant has produced no evidence the revised GS-11 PD was ever put into effect following plaintiff's second desk audit. This inherently taints defendant's other arguments.

Since the revised PD provided the basis on which the initial desk audit was reversed, the rest of defendant's argument becomes subject to an inference of discrimination. The new PD drafted by Ms. Salamido was ultimately the reason plaintiff was denied her promotion, and now that it is toxic to defendant's summary judgment attempt, it contaminates defendant's other arguments as well. The Court will examine allegation (5) to explain why HUD's failure to implement the revised PD could lead a reasonable jury to infer discriminatory motive, but it is unnecessary to examine plaintiff's other allegations.

*Whether HUD Failed to Implement Plaintiff's Revised Position Description.*

Plaintiff alleges HUD was required to implement the revised PD drafted by Ms. Salamido during plaintiff's desk audit process. According to plaintiff and her expert, HUD never implemented the new PD and never reassigned plaintiff to it. (Perry Decl. ¶ 16; Pl.'s Ex. 14 at 4, ¶ 11.) HUD's failure to do so suggests discriminatory pretext.

Defendant offers no evidence to show the revised GS-11 PD was ever put into effect. When plaintiff requested her PD in 2008, she was provided, "the same unclassified PD [she] had been working under in 2005 before the desk audit." (Perry Decl. ¶ 16.) In addition, in 2009 plaintiff's expert testified:

> The December 23, 2005, memo from Ms. Day to Ms. Perry states that the Agency intended to reassign Ms. Perry to a newly created PD developed by Ms. Salamido in response to the first desk audit. Unless Ms. Perry actually received an SF-50 and a new PD, which she did not, it appears the PD drafted by Ms. Salamido was never implemented and Ms. Perry was not reassigned to it.

(Pl.'s Ex. 14 at 4, ¶ 11.) Discrimination can be proven by "evidence from which a jury could find" adverse action "inconsistent with the . . . process that [an employer] established." *Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003). Had defendant provided evidence it implemented the new PD or provided a legitimate non-discriminatory reason why the PD was not implemented, this situation might have been avoided, but defendant did not. Thus, a reasonable jury could infer that defendant used the revised PD with its higher standards to block plaintiff's promotion and intentionally never implemented the new PD afterward.

\* \* \*

In sum, the Court concludes that plaintiff's alleged discriminatory actions constitute an adverse employment action for failure to promote, and plaintiff proved that a reasonable jury could infer discrimination based on allegation (5), defendant's failure to implement the revised position description. Accordingly, the Court will deny HUD's motion for summary judgment.

## VI.    CONCLUSION

For the foregoing reasons, defendant Shaun Donovan's Motion for Summary Judgment [62] shall be DENIED.

A separate order shall issue this date.

Signed by Chief Judge Royce C. Lamberth, August 20, 2010.

11